*This Court has jurisdiction over Defendant's supervised release, but applications regarding the sentencing Court's restitution order should be directed to that Court. Accordingly, the Clerk of Court is respectfully directed to transfer this application to the United States District Court for the District of Montana (where its case number is 15-CR-1).*

November 30, 2020
18 CR 00639-CS

SO ORDERED.

*Cathy Seibel*  12/1/20
CATHY SEIBEL, U.S.D.J.

Dear Honorable Judge Sibel –



I.   Introduction

*The Clerk shall also send a copy of this endorsement to Defendant Brown.*

This request for a credit or offset against restitution amounts is made pursuant to 18 U.S. Code § 3664(j)(2) which provides in relevant part:

> Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—
> (A)   any Federal civil proceeding; and
> (B)   any State civil proceeding, to the extent provided by the law of the State.

In this case, the Petitioner Erika R. Brown ("Brown") pleaded guilty to a single count of money laundering. In accord with the post-sentencing procedures required by section 3664, the district court set restitution in the amount of $3,741,047.82. Brown completed her 35-month sentence without incident. Although she is grateful that this episode of her life is over,[1] the stigma and isolation that she, and so many others in similar circumstances, suffer as a result of the experience of incarceration is ongoing. But more than the lingering effects on her, the traumatic and lasting impact of her absence on her two small children was and remains the most painful and difficult to address for Brown.

That said, the restitution award is a not an insignificant burden for Brown and her family. This motion seeks the allowable statutory reduction in restitution based on MVRA Code section 3664(j)(2).

II.   Statement of Facts

A.   Underlying Criminal Proceedings

On March 19, 2015, Brown pled guilty to one count of money laundering pursuant to 8 U.S.C.S § 1957. Brown was subsequently sentenced to 56 months imprisonment, 36 months supervised release, and ordered to pay restitution in the total amount of $3,741,047.82[2]. Brown filed a

---

[1] Brown notes that she had no criminal record of any kind prior to her conviction.
[2] The restitution amount listed in the plea was $3,684,884.68, but this amount was subsequently increased.

timely appeal, and the Ninth Circuit affirmed the finding of the Montana District Court on July 12, 2016. Brown requested an extension of time to file a request for rehearing and or en banc review which was granted. Brown submitted an amended pro se request for the same relief. The amended filing was rejected by the court and the original request for rehearing was denied.

On July 14, 2017, Brown filed a motion pursuant to 28 U.S.C § 2255 [See Attachment A - Motion For Relief Pursuant to 28 U.S.C § 2255]. On February 26, 2018 Brown's sentence was vacated by the Chief Judge Dana Christen and a resentencing was scheduled for May 10, 2018. At Brown's August 9, 2018 resentencing, where she was represented for the first time in the § 2255 proceedings, Brown received time served and her sentence was reduced to 35 months. Brown's attorney prevailed on both objections to the Pre-Sentencing Report ("PSR"): (1) that an inaccurate "actual loss" calculation by the prosecutor and probation had inflated Brown's guideline range by 2 points, (2) that a provision that obligated Brown to pay a civil judgement to TJS (Sean Melton, who was involved in the underlying transaction but uncharged) as a requirement of Supervised Release was improper.

In September of 2018, Brown's supervised release was transferred from Montana (where the underlying criminal proceedings occurred) to this district and assigned to this Court. What remains of Brown's penalty is community supervision through August 8, 2021, and the restitution.

B.   The Loan

1.   The Original Loan Process, Default and Sale (2009-2014)

Excel National Bank (then EH National Bank and most recently, EH Private Bank ("EHNB" or "the Bank")) closed a four million dollar loan made for the purchase of real estate to BlueVault[3] on September 3, 2009. The United States Department of Agriculture ("USDA") was a guarantor of 80% of the loan. In 2010, EHNB sold the entire loan, including its 20% interest, on the secondary market but retained the servicing. This ensured the Bank an upfront profit as well as an ongoing revenue stream from the servicing.

After BlueVault made four years of payments, it defaulted and EHNB subsequently foreclosed on the real property. In 2014, the Bank sold the prime Montana property with over a hundred acres of prime real estate for a "nominal" sale price of $685,000, despite the fact that the Bank's own appraiser had valued the property at $3.2 million. The Bank did not counter the extremely low offer price—and in a memorandum written by the Bank's civil counsel, they explain why.

---

[3] Blue Vault was a Wyoming LLC.

The memorandum encourages the Bank and the USDA to sell the property to secure a more favorable position before a civil court Judge in a civil action against Brown and Sean Melton. [See Attachment B - Memo to USDA]. EHNB made a choice to "dump" the property during the foreclosure to achieve a better position in front of a Judge at a settlement conference. This action violated industry standards and the Bank's own loss mitigation policies.

In addition, EHNB had no incentive to minimize its losses because it sold its entire stake in the loan on the secondary market years prior to the foreclosure and was now only the servicer of the loan. In 2010, EHNB had sold 80% of the loan backed by the USDA guarantee as well as their remaining 20% of the loan to 1st National Bank of Southern Florida. To date there remains no record that EHNB ever bought back the 20% they sold, and it seems highly unlikely they did so since 1st National Bank of Southern Florida went out of business in 2012. In the end, the USDA would bear nearly all the burden of any loss and seek recovery, if any, from Brown not the bank.

In 2014, the USDA paid in full the financial entities/banks that purchased the 80% of the loan that was backed by its guarantee. At no time was EHNB requested to document, return the profit they received for the 2010 sale of the $4 million loan on the secondary market or deduct from the loss amount any profit received from this loan. The PSR also includes no information showing that EHNB repurchased any part of the loan, if they claim they purchased back the 20% from 1st Bank of Southern Florida years after they went out of business. Since the Bank sold the loan in its entirety, it is unclear why it was designated as a victim for purposes of restitution. Despite this, Brown's restitution is based on the original 80/20 split of the loan between USDA and EHNB. Any monies collected by EHNB or USDA are to be divided between these entities to pay down the restitution balance.

Brown's restitution amount of $3,741,047.82[4] came directly from an email written by the Bank's civil attorney. The email listed the Bank's costs as determined in a civil action filed against Brown. Brown was without counsel and unable to secure someone to defend her in the civil action when the criminal action was filed. [See Attachment C – loss calculated by EHNB]. Brown's criminal attorney spoke to the Bank's civil attorney and both parties agreed that if Brown agreed to the civil judgment amount that the Bank would write a letter in support of Brown at sentencing. Although Brown agreed to the civil judgment, the Bank never wrote any letter in support of Brown at her sentencing. And despite knowing that the proposed restitution and or loss amount for Brown's criminal case was based on EHNB's civil calculations, Brown's attorney never moved to challenge the restitution amount and or the loss.

The genesis of the asserted loss number is further evidenced by Bank-generated spreadsheets listing costs, and copies of correspondence with USDA and the Bank's counsel which were

---

[4] This figure was also used for Brown's actual loss amount for guideline purposes which was later determined to be incorrect at her resentencing on August 9, 2018.

disclosed in discovery. These documents list the Bank's alleged "liquidation costs" and other items. The Government's adoption of these figures and Brown's council's decision to waive her Mandatory Victims Restitution Act ("MVRA") (without Brown's authorization) and let all of the restitution go unchallenged resulted in the inclusion of amounts that should not have been included in a restitution order. Even EHNB's counsel raised the concern that all the costs contained in his client's figure might not be allowable in the restitution figure. Yet, neither Brown's original attorney, the probation department, nor the prosecutor addressed these discrepancies with the district court.

      C.      The Related Civil Litigation

On November 16, 2015, EHNB filed a civil action in Montana civil court against Colven, Tran & Meredith PC which asserted that the Colven firm negligently approved a $750,000 check submitted for the closing of the original loan. As the owner of the real property purchased by BlueVault, Melton was involved in the transactions underlying the criminal case as well as a number of others who also profited from payments required by the Bank to close the original loan - however, he and all the others were not indicted in the Montana criminal action. In January 2016, the case was transferred to Texas where the Colvin law practice is located. In the Texas court the Law Firm proceeded to name both Brown and Sean Melton (doing business TSJ, LLC) ("Melton") as responsible third parties. A trial date was set, but months prior to the trial date on September 29, 2016 the parties settled and on October 25, 2016 a joint notice of settlement was filed with the Court. Brown has no access to the settlement agreement, and subpoenas to both parties to the Texas civil action are attached for the Court's review and approval. The subpoenas require the Texas civil action parties to produce the settlement agreement and/or documents which disclose the amount paid to EHNB in settlement. <u>It is this amount for which Brown seeks a reduction of restitution pursuant to 3664(j)(2)</u>.

EHNB has never revealed this civil settlement amount, or any other civil settlements, that they have received for their loan-related loss, despite the fact that such monies should have been reported in compliance with statute  In addition, the funds need to be reported so that they are correctly divided and appropriately applied between the USDA and EHNB. At this time, it is known that EHNB has received at least one settlement, yet the USDA has not received 80% of that settlement and Brown's restitution has not been reduced accordingly.[5]

---

[5] Prior to this loan, EHNB was required to operate under a Consent Decree for during which they were issued multiple Cease and Desist Orders for "unsafe or unsound banking practices relating to asset quality and earnings, and failure to comply....". As with Bank of America, Wells Fargo and other Banks during this time period, EHNB was "deliberately indifferent" to the risk of the loan because they intended to sell the loan on the secondary market and profit with almost no risk. EHNB knew it was operating outside the boundaries of lawful lending when it made this loan in violation of the existing Consent Order it was operating under issued by the Office of Comptroller of the Currency of the United States of America (OCC) in June of 2009. It was not until 2018 that EHNB was finally

D. More Recent Developments

In October of 2018, Brown met with FLU for the first time and gave them all the information she had on EHNB's past practices and the settlement with the law firm in TX. Brown also informed FLU that the bank had received a civil settlement which should be applied to her restitution, and thus double dipping. [See Attachment D – Original Complaint, Joint Settlement, Judge's Order] After a number of months FLU informed Brown it had no jurisdiction to request any information on the settlement that EHNB had received for the same loss that they were collecting on from Brown, but agreed to send a general letter to EHNB asking what compensation they have received. [See Attachment E - FLU letter to EHNB].

On August 15, 2019, Brown spoke to Lakisha Robinson, Financial Investigator for USANYS and was told that the Bank reported that it had received only $2,976.43 toward the restitution order. [See Attachment F – emails with FLU]. The Bank's response clearly omitted the settlement amounts for which Brown is entitled to an offset pursuant to section 3664(j)(2). <u>Given EHNB's demonstrated lack of candor, Brown simply has no recourse other than to issue the attached subpoenas and seek the assistance of the Court in this matter.</u>

III. Argument

EHNB received an undisclosed settlement from a state civil proceeding that was for the "same loss" covered by Brown's restitution order. The statue requires that Brown's restitution order be credited in the amount of this total settlement in addition to any other settlements that they have received for the "same loss".

U.S.C § 3664(j)(2) explicitly states that when a victim later recovers compensatory damages in a state or federal civil proceeding for the "same loss' covered by the order of restitution the order of restitution must be credited. The victim is not entitled to a double recovery for a single loss. *.S. vs Yalincak,* 853 F.3d 359 (2nd Cir. 2017). Courts have held that it is the criminal defendant's burden to prove the amount of the offset, that is, the amount the victim has received in civil litigation for its loss. *United States v. Parker,* 927 F.3d 374, 381-82 (5th Cir. 2019); *United States v. Smathers,* 879 F.3d 453, 461 (2d Cir. 2018)

---

released from its eleven yearlong Consent Decree because it would not operate lawfully under the United States's established Banking rules and regulations.

EHNB never reported the settlement and when asked by FLU in March of 2019 for an accounting of payments received, they only reported that they had only received the total of Brown's payments to them. At best EHNB selectively neglected to report the settlement from September 29, 2016 and or any other settlements it has received for the "same loss" as Brown's restitution order. Also, 80 percent of the money received from the settlement should have been applied to USDA's outstanding balance as EHNB only originally held 20 percent of the loan (which EHNB sold and on the secondary market in 2011).

In 2018 in US v Dharia, the Court makes it abundantly clear that victims cannot double recover for the "same loss". "The case law can be restated in a simple principle: "restitution may not result in double recovery." *U.S. v Cummings*, 198 F. Supp.2d67.79 (S.D.N.Y 2002).

In the instant case, once the subpoenas are returned Brown will ask that the Court to issue an order providing for a credit/offset to Brown's restitution. In 2017, in *U.S. v. Yalicak, sipra.* the Appellate Court wrote ..."our sister courts have recognized that defendants are entitled to move the district court for a credit or offset to their restitution obligation pursuant to § 3664(j)(2) once a victim has recovered such damages. Further, "A defendant may seek such credit regardless of whether that credit is sufficient, standing alone, to discharge the defendant's restitution obligations entirely." *Id.*, Court of Appeals, 2nd Circuit 2017. *Also see,* e.g. *U.S. v. Malone*, 747 F.3d 481, 489 (7th Cir. 2014).

IV.     Conclusion

For all of the foregoing reasons, Brown requests that the Court issue an order (1) approving for issuance the subpoenas attached as Exhibits -- and -- to this motion and setting return date for those subpoenas; and (2) setting a date for Brown to submit an amended motion incorporating the information received in response to the subpoenas for the Court's consideration and ruling on Brown's request for a restitution credit/offset.


Respectfully Submitted,

*[signature]*

Erika Rae Brown